## Case No. 7,149.
### JACKSON v. UNITED STATES.
[4 Mason, 186.] 1

Circuit Court, D. Massachusetts. Oct. Term, 1826.

1 [Reported by William P. Mason, Esq.]

Mr. Blake, Dist. Atty., for the United States.

L. Shaw and Mr. Bartlett, for plaintiff in error.

STORY, Circuit Justice. In the present case the facts are, that the schooner Alert was a coasting vessel duly licensed, and bound on a voyage from a port in the state of North Carolina to the port of Plymouth in the state of Massachusetts. She picked up a hogshead of West India rum at sea on her passage, and on her arrival at Plymouth the same was unladen without any permit, and without any payment of duties. The schooner had no other distilled spirits, or wine or tea, or any other goods of foreign growth or manufacture on board, the whole cargo consisting of domestic produce. The voyage being from one port to another within one of the great districts established by the act of 2d of March, 1819, c. 172 [3 Stat. 492, c. 48], it falls under those sections of the coasting act of 1793, c. 8 [1 Stat. 305], which regulate coasting vessels, trading from one district to another in the same state, or from a district in one state to a district in an adjoining state. These sections are the 14th, 15th, and 18th of the act. From the facts stated, the schooner, not having on board foreign goods of the stipulated description or value provided for by the 14th and 15th sections, was not bound

to deliver a manifest of her cargo or obtain a permit, previous to her departure on the voyage, or on her arrival in the port of discharge, to make any report thereof at the custom-house. She falls then within the purview of the 18th section only and the master was obliged to keep a manifest on board, and to exhibit it for the inspection of any revenue officer requiring the same. And the omission is punished by a specific personal penalty; and any foreign goods found on board, and not included in the manifest, are declared to be forfeited. The question is, whether a coasting vessel, under such circumstances, is within the purview of the 50th section of the revenue collection act of 1799, c. 128 [1 Story's Laws, 615; 1 Stat. 665, c. 22]. That some of the sections of that act are applicable to coasting vessels, as well as vessels engaged in foreign trade, is clear from the terms of the act, and was so adjudged by this court as to the 54th section of the act in U. S. v. Mantor [Case No. 15,-719]. That many, and indeed most of the sections are applicable solely to vessels engaged in foreign trade, is admitted, and is indeed too plain for argument. The words of the 50th section are, "no goods, wares, or merchandise, brought in any ship or vessel, from any foreign port or place, shall be unladen or delivered from such ship or vessel within the United States, &c. &c. without a permit from the collector," &c. &c.; and if so unladen, "the master, &c. and every other person, who shall knowingly be concerned or aiding therein, or in removing, storing, or otherwise securing the said goods, &c. shall forfeit and pay each severally the sum of 400 dollars for each offence," &c. It has been already decided in this court, in the cases cited at the bar (The Industry [Id. 7,028], The Harmony [Id. 6,081]), that this section applies to all goods brought from a foreign port, or place, whether they were so brought in the vessel from which they are unladen, or were, in the course of the voyage, transhipped from another vessel into the former. The court then thought, that the act, though inartificially worded, meant to annex the qualification "of foreign port or place" to the goods, and not to the vessel. That point is not now in controversy.

The first objection stated is, that these goods being found derelict on the seas were not liable to the payment of duties on importation in any vessel. But it seems to me, that they are liable to the payment of duties upon the principles decided by the supreme court in the case of The Concord, 9 Cranch [13 U. S.] 387. But if they were not so liable, that would not excuse the unlading of them without a permit, for no foreign goods, whether liable to duty or not, or even if prohibited, can be landed without a permit. This has been often decided in this court; and the principle is affirmed by the supreme court, in Harford v. U. S., 8 Cranch [12 U. S.] 109. See The Betsy [Case No. 1,365]. Then

again, it is said, derelict goods are not within the provisions of the collection act of 1799, c. 128, because they are cases of rare occurrence, and all the requisites, required by the act on importations, cannot be complied with. The case of Peisch v. Ware, 4 Cranch [8 U. S.] 346 is cited in support of this position. But it is pushing the doctrine of that case far beyond its just import to assert, that because all the requisites of the act cannot be complied with in a particular case, there is a dispensation of compliance with any. The authority of that case is admitted in the most extensive reach of its reasoning; but that reasoning goes no further than to declare, that no forfeiture shall accrue for violations of the regulations prescribed by the act, arising from unavoidable accident or necessity. The act does not require impossibilities; but supposes the party able to comply, and the case such as admits of compliance with its requisitions. But if the party can comply to a certain extent, he is bound pro tanto to follow the law; and he is excused, so far only as he is unavoidably prevented from compliance. In the present case, the goods might have been entered at the custom-house, and a permit obtained for the unlivery, upon security for the duties. The party voluntarily, and, in the eye of the law, criminally, omitted his duty, and engaged in smuggling.

The great difficulty in the case arises from another consideration. Coasting vessels, in the predicament of the Alert, are not obliged to enter, or obtain permits at the custom-house. The language of the 50th section is applicable to vessels having on board foreign cargoes, and obliged, before unlading, to obtain a permit. If it is to be extended to vessels engaged in the coasting trade, it must be applied to all indiscriminately, whether they have on board foreign goods of small or of large value; whether these goods have already paid duty, or are dutiable or not. If it is to be construed in this extensive sense, it would certainly overturn the great object of the provisions of the 14th and 15th, and, above all, of the 18th sections of the coasting act. It would be an implied repeal of them. I do not think, that the argument, to this extent, can be maintained. The clause now in question is but a transcript of the 12th section of the collection act of 1790, c. 35, and of the 27th section of the collection act of 1790, c. 35 [1 Stat. 163]. The coasting act passed after those acts; and the fair presumption is, that it was not, as to the point under consideration, to be affected by them, it not being in pari materiâ. If the act of 1799, c. 128 [chapter 22], could be supposed to have a different operation, it having passed after the coasting act, the provisions of the latter are fully recognized as in force by the act of 1819, c. 172 [chapter 48]. Unless coasting vessels are generally within the purview of the 50th section of the act of 1799, I cannot perceive, how having

on board foreign goods which have not paid duties, or have not been regularly imported, can change the interpretation. If coasting vessels are not bound to obtain a permit before unlading, it appears to me difficult to maintain, that the 50th section works a forfeiture, because that is not done, which the law does not compel the party to do.

I am aware, that this view of the act leaves the revenue system exposed to great frauds; and that if coasting vessels are exempted, under like circumstances, from obtaining permits, there is great probability, that the revenue will suffer to an alarming extent by a very easy, and at the same time a very mischievous process. The remedy, however, lies with congress, and not with courts of law; and indeed the government would not now be without some remedy by the forfeiture of the vessel under the 32d section of the coasting act, and the forfeiture of the coasting bond under the 4th section of the same act. I have been struck, as the learned judge of the district court was struck, with the obvious inconveniences of this limitation of the terms of the 50th section. But after due deliberation I am not satisfied, that where the party is excepted by law from obtaining a permit, he may yet be within the penalty of this section. The case of coasting vessels does not appear to me to be intended to be reached by it. I cannot consider a coasting vessel quo ad this transaction, as losing her coasting character. The judgment, therefore, of the district court must be reversed, and a venire facias de novo awarded. Judgment reversed.